1  John C. Breslo, Esq.  State Bar No. 014972
       Email: jbreslo@breslolaw.com
2  The Breslo Law Firm
   8426 East Shea Boulevard
3  Scottsdale, Arizona 85260
   (480) 664-6635 (tel.)
4
   Attorneys for Plaintiff
5  Nannette Fawn Anderson

6

7

8                    UNITED STATES DISTRICT COURT

9                       DISTRICT OF ARIZONA

10
   NANNETTE FAWN ANDERSON,          )   CASE NO:
11                                   )
                                     )   COMPLAINT FOR:
12            Plaintiff,             )
                                     )   BREACH OF THE EMPLOYEE
13       VS.                         )   RETIREMENT INCOME
                                     )   SECURITY ACT OF 1974;
14  LIFE INSURANCE COMPANY OF        )   DECLARATORY RELIEF;
    NORTH AMERICA,                   )   PREJUDGMENT AND
15                                   )   POSTJUDGMENT INTEREST;
              Defendant.             )   AND ATTORNEYS FEES AND
16                                   )   COSTS
                                     )
17  _____)

18       Plaintiff Nannette Fawn Anderson herein sets forth the allegations of her

19  Complaint against Defendant Life Insurance Company of North America (hereinafter

20  "LINA" or "Defendant").

21                    **PRELIMINARY ALLEGATIONS**

22       1.    "Jurisdiction" - This action is brought under 29 U.S.C. sections 1132(a), (e),

23  (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter

24  "ERISA") as it involves a claim by Plaintiff for employee benefits under employee

25  benefit plans regulated and governed under ERISA.  Jurisdiction is predicated under these

26  code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.  This

27  action is brought for the purpose of obtaining benefits under the terms of an employee

28  benefit plan, to clarify and enforce Plaintiff's past, present and future rights to benefits

                                      1

under the employee benefit plan named herein as defendant, and to obtain other equitable relief, including but not limited to, a declaration that Plaintiff is disabled and qualifies for payment of benefits. This action also seeks prejudgement and postjudgment interest, as well as attorneys fees and costs.

2.    Plaintiff was, at all times relevant, an employee of HUB International Limited ("HUB") and a resident of Scottsdale, Arizona.

3.    LINA is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

4.    CIGNA Group Insurance, Disability Management Solutions ("CIGNA") is a company that, for reasons unknown at this time, had taken over LINA claims handling responsibilities with respect to Plaintiff's various claims. Plaintiff is informed and believes, and on that basis alleges, that CIGNA was acting as LINA's agent in its dealings with Ms. Anderson and her counsel.

5.    HUB created a short term disability ("STD") plan so as to provide STD coverage to its employees. HUB funded this Plan, hereinafter referred to as the HUB STD Plan, through a policy of insurance issued by LINA. As such, LINA is the entity responsible for paying STD benefits which are due under the HUB STD Plan. Similarly, LINA acts as the HUB STD Plan's fiduciary, and makes all decision whether an employee is entitled to STD benefits under the HUB STD Plan.

6.    HUB also created a long term disability ("LTD") plan so as to provide LTD coverage to its employees. HUB funded this Plan, hereinafter referred to as the HUB LTD Plan, through a policy of insurance issued by LINA. As such, LINA is the entity responsible for paying LTD benefits which are due under the HUB LTD Plan. Similarly, LINA acts as the HUB LTD Plan's fiduciary, and makes all decisions as to whether an employee is entitled to LTD benefits under the HUB LTD Plan.

7.    As an employee of HUB, Plaintiff is and was a participant in both the HUB STD Plan as well as the HUB LTD Plan. Plaintiff is currently disabled pursuant to the terms of both the HUB STD Plan as well as the HUB LTD Plan.

8.    As such, pursuant to the terms and conditions of the HUB STD Plan, Plaintiff is entitled to past due STD benefits for the period over which those benefits are payable.

9.    In addition, pursuant to the terms and conditions of the HUB LTD Plan, Plaintiff is entitled to LTD benefits for so long as Plaintiff remains totally disabled as defined by the terms of the HUB LTD Plan.

10.    At the time her claims arose Plaintiff resided in this judicial district.  In addition, LINA can be found in this judicial district.  Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

**In January of 2013 Ms. Anderson Was Struck with a Degenerative Condition Which Did Progressive Damage to Her Nervous System**

11.    Plaintiff began work for HUB in May of 2012.  As the time she was in very good health.  She led a very active lifestyle, doing a lot of hiking and travel.

12.    During Plaintiff's first seven months at HUB she worked long hours, at a pace that was faster than most of her co-workers.  During the three months prior to her beginning work at HUB she suffered from none of the symptoms that later disabled her and, as a result, did not seek any treatment for these symptoms.

13.    The symptoms of the neurological illness that would eventually disable Plaintiff first appeared in January of 2013.  The first of these symptoms were debilitating headaches, which would be followed by severe neck pain.

14.    Plaintiff developed additional symptoms in February of 2013.  One of these symptoms was a problem with her speech.  Her voice changed, becoming slurred and scratchy.

15.    At around the same time Plaintiff started having problems with memory and concentration.  She began to forget simple things and would be unable to remember certain words when she was in the middle of a sentence.

///

**COMPLAINT FOR ERISA BENEFITS; Case No. _____**

16.     Also in February, Plaintiff first started having problems walking. She would sometimes have to drag her right leg, and walk with a bent posture. She had to maintain an abnormally wide stance to avoid falling over.   This didn't always work, and Plaintiff had a number of falls over this period.

17.     Ms. Anderson also began suffering from back pain in February of 2013. During this period Plaintiff's neck pains became much worse.

18.     In February of 2013 Ms. Anderson also began suffering from extreme fatigue.   She would also experience weakness, once blacking out as a result of this weakness.

19.     In February and March of 2013 these symptoms had a serious impact on Ms. Anderson's ability to work.   She tried to continue working but as her symptoms progressed she became less and less able to do her job.  Many of Plaintiff's co-workers noticed her increasing problems and expressed concern over her condition. Eventually, in March of 2013 Plaintiff was no longer able to keep working because of her condition and she went on disability.

20.     These neurological problems continued to progress, and Plaintiff's condition continued to deteriorate.  At present Plaintiff has difficulty walking without the aid of a walker.  The Social Security Administration has sent Ms. Anderson to a independent medical examination, and that examining physician concluded she was disabled.

**FIRST CAUSE OF ACTION AGAINST
LINA FOR DENIAL OF STD BENEFITS**

21.     At all times relevant, Plaintiff was employed by HUB.  During the course of Plaintiff's employment she became entitled to benefits under the terms and conditions of the HUB STD Plan.  Specifically, while Plaintiff was covered under the HUB STD Plan, Plaintiff suffered a disability rendering Plaintiff totally disabled as defined under the terms of the HUB STD Plan.

///

4

22.    At all times herein mentioned, Plaintiff was a covered participant under the terms and conditions of the HUB STD Plan.

23.    Pursuant to the terms of the HUB STD Plan, Plaintiff made a claim to LINA for STD benefits under the HUB STD Plan.  Plaintiff's claim for STD benefits was denied by CIGNA, in spite of the fact that Plaintiff had provided STD with evidence that she was disabled.

24.    Plaintiff attempted to appeal this denial, with additional evidence including the fact that the Social Security Administration, after an independent examination, had found her disabled.  However CIGNA refused to consider Plaintiff's appeal, saying that it was beyond the 180 days allowed for an appeal.   In fact, however, the relevant Policy contains no provision requiring that an appeal to a denial be submitted within 180 days of the denial.

25.    Defendant CIGNA wrongfully denied Plaintiff's claim by failing to pay her STD benefits at a time when she was entitled to those benefits under the terms of the HUB STD Plan, as Plaintiff was disabled and unable to work and therefore entitled to benefits.  Further, CIGNA improperly denied Ms. Anderson the right to appeal from that denial.

26.    Following the denial of Plaintiff's disability claim under the HUB STD Plan, Plaintiff exhausted all administrative remedies required under ERISA, and Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the HUB STD Plan.

27.    As a proximate result of the aforementioned wrongful conduct of LINA, Plaintiff has damages for loss of disability benefits in a total sum to be shown at the time of trial.

28.    As a further direct and proximate result of this improper determination regarding Plaintiff's STD claim, Plaintiff in pursuing this action has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

5

## SECOND CAUSE OF ACTION AGAINST
## LINA FOR DENIAL OF LTD BENEFITS

29.   Plaintiff refers to and incorporates by reference paragraphs 1 through 28 as though fully set forth herein.

30.   At all times relevant, Plaintiff was employed by HUB.  During the course of Plaintiff's employment she became entitled to benefits under the terms and conditions of the HUB LTD Plan.  Specifically, while Plaintiff was covered under the HUB LTD Plan, Plaintiff suffered a disability rendering Plaintiff totally disabled as defined under the terms of the HUB LTD Plan.

31.   At all times herein mentioned, Plaintiff was a covered participant under the terms and conditions of the HUB LTD Plan.

32.   The HUB LTD Plan contains a limitation for pre-existing conditions.  Under this pre-existing condition limitation, if an employee becomes disabled within 12 months of when her coverage begins, the disability is not covered if it is "caused by, or resulting from, a Pre-existing condition."  Under the Plan a condition is pre-existing if the claimant received treatment for it, or should have received treatment for it, in the three months prior to her date of coverage under the HUB LTD Plan.

33.   Ms. Anderson's disability commenced on March 26, 2013 and her effective date of coverage, June 1, 2012, was within 12 months of her disability date.  As such, Plaintiff is potentially within the scope of this pre-existing condition limitation if she were treated for her neurological condition in the three months prior to June 1, 2012.  However, as alleged above, Plaintiff's neurological condition was not pre-existing, as symptoms of this disease did not arise until January of 2013.

34.   After Plaintiff's STD claim was denied, her counsel, Mr. Petti, wrote to CIGNA.  In Mr. Petti's January 31, 2013 letter he asked for a claim form, so Ms. Anderson could make an LTD claim.

35.   CIGNA did not respond to this letter, instead writing directly to Ms. Anderson.  In its February 6, 2013 letter CIGNA stated that it could not decide Ms.

6

Anderson's LTD claim as it had been unable to obtain records from the pre-existing period (i.e. March 1, 2012 through May 31, 2012) from Drs. Kaufman, Lykins, Gause, Durbin, Mr. Hessler and Ms. Edwards.  The letter continued that "if we do not receive this information by March 10, 2014, we will make a determination based on the information on file."

36.    Mr. Petti wrote back on February 20, 2014, expressing some surprise that Ms. Anderson had an LTD claim in progress, given that she had not filled out a claim. According to his letter:

> Ms. Anderson has provided me with a letter and a packet of documents you sent her on February 6, 2014.  According to this letter, you are writing to provide Ms. Anderson with "an update on the status of [her] Long Term Disability (LTD) claim."  I am somewhat puzzled by this, as I was unaware that Ms. Anderson had filed an LTD claim.  In my letter of January 31[st] I stated that Ms. Anderson had wanted to make an LTD claim, and I asked for claim forms.  Do I understand that there is already a claim in progress?

A true and correct copy of Mr. Petti's letter is attached to this Complaint as Exhibit A.

37.    That same day Mr. Petti wrote to Ms. Anderson's various treating physicians, attempting to obtain (in the short time frame provided by CIGNA) the medical records requested in CIGNA's letter of February 6, 2014.

38.    On February 28, 2014 Mr. Petti spoke to CIGNA's Erin Mascari.  Mr. Petti stated that he was unaware that Plaintiff had made an LTD claim.  Ms. Mascari stated that CIGNA had started the LTD claims process on Ms. Mascari's behalf.  Mr. Petti informed Ms. Mascari that he had written to the various doctors for records, that obtaining medical records was sometimes a time-consuming prospect, and asked for additional time to obtain these records.

39.    On February 28, 2014, Ms. Mascari responded in writing, stating that CIGNA would decide Plaintiff's claim without the additional information from Plaintiff's physicians unless this information was provided by March 10, 2014.

40.    Mr. Petti responded on March 4, 2014.  A true and correct copy of counsel's letter, minus the enclosed medical records, is attached to this letter as Exhibit

///

7

B.  Mr. Petti started by stating that he had been able to obtain records from some of Plaintiff's physicians, and these records were being provided:

> First, as we discussed on February 28th, I am aware that CIGNA needs Ms. Mascari's medical records.  As I told you, I have sent my own requests to Ms. Mascari's providers and will forward them as they arrive.  Three of the physicians have responded, Dr. Kaufman, Dr. Campbell, and Dr. Patel.  Dr. Patel's response was incomplete, but I find her complete report is located in both Dr. Kaufman's and Dr. Campbell's records.  At any rate, enclosed with this letter are the records provided by Dr. Kaufman and Dr. Campbell.

41.     In his letter of March 4, 2014, Mr. Petti stated that there were three reasons why CIGNA's decision to press on and decide Plaintiff's claim by March 10, 2014 and without complete information was misguided.  The first is that the Department of Labor ("DOL") regulations state that the proper course for CIGNA to take would be to toll Ms. Anderson's claim pending receipt of complete information.  According to Mr. Petti's letter:

> First, as I told you during our conversation, the applicable regulations promulgated by the DOL contain a procedure for what an ERISA fiduciary should do when it is waiting for additional information.  Specifically, pursuant to 29 CFR § 2560.503-1(f)(4), "[i]n the event that a period of time is extended as permitted pursuant to paragraph (f)(2)(iii) or (f)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information."

42.     The second reason given in Mr. Petti's letter for waiting for the remainder of Ms. Anderson's medical records before deciding her LTD claim was that she had not even filed such a claim yet.  According to Mr. Petti's letter of March 4, 2014:

> Second, it appears from our conversation on February 28th that Ms. Anderson never submitted a "claim," *per se.*  Rather, CIGNA started the claim process on Ms. Anderson's behalf based on its determination that she wished to file a claim.  This is fine, but I find it interesting that CIGNA intends to decide Ms. Anderson's claim (and, presumably, deny it for lack of evidence) only ten days after Ms. Anderson and her counsel first learned that she had a claim pending.

43.     Finally in his letter of March 4, 2014, Mr. Petti reminded Ms. Mascari that, pursuant to both its position as an ERISA fiduciary and under unpreempted state

///

8

1  insurance law, CIGNA had an obligation to fully investigate Plaintiff's claim prior to

2  denying it.

3       44.    On March 6, 2014 Mr. Petti received records from another of Plaintiff's

4  physicians, Dr. Durbin, and forwarded these on to CIGNA.

5       45.    On March 10, 2014 CIGNA made good on its promise and denied Plaintiff's

6  claim.  In its denial letter CIGNA's Ms. Mascari did not dispute that Plaintiff was

7  disabled.  Rather, she denied Plaintiff's claim based on the pre-existing condition

8  limitation.  A true and correct copy of this denial letter is attached to this Complaint as

9  Exhibit C.

10       46.    On May 28, 2014 Mr. Petti wrote a response to CIGNA's letter of March

11  10th.  A true and correct copy of this letter is attached to this Complaint as Exhibit D.

12  Mr. Petti's letter began by pointing out that CIGNA never actually concluded that Ms.

13  Anderson's claim was pre-existing, rather it denied her claim because it lacked records

14  by which it could establish this to its satisfaction:

15         This letter is in response to your letter of March 10, 2014 denying Ms.
   Anderson's claim on the grounds that it is pre-existing.  According to your
16         letter, you didn't actually decide that Ms. Anderson's claim was pre-
   existing, only that you could not make this determination because you were
17         lacking records from Dr. Gause, Dr. Hessler and Dr. Lykins.

18       47.    Mr. Petti then pointed out that it was patently obvious from the medical

19  records already in CIGNA's possession that Ms. Anderson did not treat with Dr. Gause,

20  Hessler or Lykins during the pre-existing period of  March 1, 2012 through May 31,

21  2012.  For example, Mr. Petti pointed out that CIGNA already had Dr. Gause's initial

22  report dated March 19, 2013:

23         For example, it is difficult to see how Dr. Gause's records were necessary
   to see if Ms. Anderson was treated for her neurological condition in 2012.
24         Dr. Gause's March 19, 2013 report is already in CIGNA's file, and this
   report clearly states, on the first page, in capital letters, underlined and in
25         bold face type that it is the "**INITIAL CONSULTATION**."  If Ms.
   Anderson's initial consultation with Dr. Gause was in March of 2013, he
26         clearly did not treat her during the March 2012 through May 2012 time
   frame.

27  ///

28  ///

9

48.     Given that CIGNA had evidence showing that Ms. Anderson had not treated with these doctors during the pre-existing period, Mr. Petti pointed out that denying her claim on the bare possibility that her claim was pre-existing constituted a breach of CIGNA's fiduciary obligations:

> In short, it is patently obvious from CIGNA's file that additional records from Drs. Gause, Hessler, and Lykins would not show that Ms. Anderson had been treated for her condition during the pre-existing period. Denying Ms. Anderson's claim as pre-existing due to the lack of these records was bad faith and a breach of CIGNA's fiduciary obligations. And requiring me to obtain those records was just the type of paper drill that insurers routinely force claimants to undergo to delay their claims and wear them out.

49.     Nonetheless, Mr. Petti's letter continued that the complete records from these physicians were being provided, and that these records demonstrated that Ms. Anderson had not treated with any of these physicians until well after the pre-existing period.

50.     The letter concluded with two additional points.  First, that on Ms. Anderson's appeal from this denial, DOL regulations required that Ms. Mascari have no further involvement in Ms. Anderson's claim.  "[U]nder 29 CFR § 2560.503-1(h)(3), when an employee involved in a denial is permitted to work on the appeal from that denial, the regulations  presume that the review process does not comply with ERISA's 'full and fair review' requirement."  Further, the letter predicted, accurately as it turned out, that when CIGNA eventually concluded that Ms. Anderson's  claim was not pre-existing it would search around for some other reason to deny her claim:

> Second, given the bad faith of CIGNA's denial of Ms. Anderson's LTD claim, I fully expect your replacement will search around for an alternative basis on which to deny her appeal.

Mr. Petti's May 28th letter pointed out that the Ninth Circuit has held that an insurer's changing its reasons for denial constitutes evidence that it allowed its financial self-interest to influence the performance of its fiduciary duties.

51.     On July 9, 2014 CIGNA's Ms. Aguinaga called Mr. Petti and stated that, before it could determine whether Ms. Anderson's claim was pre-existing, it required statements from Drs. Gause, Hessler, and Lykins that they had not treated Ms. Anderson

10

during the pre-existing period of March 1, 2012 through May 31, 2012. This is in spite of the fact that Mr. Petti had provided CIGNA with the complete records of those physicians showing that Ms. Anderson hadn't commenced treatment with them until well after May 31, 2012.

52.     Further, Ms. Aguinaga confirmed during this phone call that this information was demanded at Ms. Mascari's instruction, even though Ms. Mascari's continued involvement on Ms. Anderson's claim, now that it was on appeal, constituted a specific violation of DOL regulations. In his letter of July 9, 2014 Mr. Petti stated that if CIGNA needed this information it should obtain it itself.

53.     CIGNA did nothing, and July 21, 2014 Mr. Petti wrote Ms. Aguinaga asking about the status of Ms. Anderson's claim. No response was received, so on July 28, 2014 Mr. Petti wrote again asking about the status of Ms. Anderson's claim. On that same day Ms. Aguinaga responded. In her letter of July 28, 2014, she stated that CIGNA needed statements from Drs. Hessler and Lykins that Ms. Anderson did not treat with them during the pre-existing period. Ms. Aguinaga stated that until this information was provided CIGNA would take no further action on Ms. Anderson's claim. A true and correct copy of Ms. Aguinaga's July 28th letter is attached to this Complaint as Exhibit E.

54.     Counsel for Ms. Anderson provided the requested information on October 19, 2014. In his letter Mr. Petti noted the outrageous nature of CIGNA's stonewalling and that he had initially intended to just file a lawsuit. However he decided to "walk the extra mile" on his client's behalf:

> Essentially, then, CIGNA was refusing to adjudicate Ms. Anderson's claim on the grounds that her illness might be pre-existing, even though (1) CIGNA has no evidence it was pre-existing and (2) all evidence currently in the Record shows it was not. Given CIGNA's bad faith conduct, my initial impulse was to just file a lawsuit. On reflection, though, I have decided to walk the extra mile on my client's behalf. Enclosed, then, are certifications from Dr. Lykins and Dr. Hessler that they did not treat Ms. Anderson during the relevant period.

A true and correct copy of Mr. Petti's letter is attached to this Complaint as Exhibit F.

11

55.     As Ms. Anderson's counsel had predicted in his letter of May 28, 2012, not that CIGNA had indisputable proof that Ms. Anderson's claim was not pre-existing, it found another reason for denying her claim.  In a letter dated November 7, 2014 CIGNA denied Ms. Anderson's appeal, this time on the ground that it did not believe she was disabled.  A true and correct copy of CIGNA's November 7th letter is attached to this Complaint as Exhibit G.

56.     Remarkably, CIGNA's November 7th letter stated that it expected Ms. Anderson to appeal yet again before it could file a lawsuit.  Mr. Petti responded by letter dated November 23, 2014.  He pointed out that Ms. Anderson had already appealed the denial of her claim, and that he was unaware of any Plan or ERISA requirement that she appeal once again.  He specifically asked CIGNA's Ms. Garrison to identify the Plan language by which it could demand that Ms. Anderson appeal once again.  "As such, I would appreciate an explanation (with citation to the Plan language as appropriate) for CIGNA's determination that it can compel Ms. Anderson to appeal yet again prior to filing a lawsuit."  A true and correct copy of Mr. Petti's letter of November 23, 2012 is attached to this lawsuit as Exhibit H.

57.     CIGNA's Ms. Garrison responded by phone on December 1, 2012, and this phone call was memorialized by Mr. Petti's letter of December 2, 2014.  A true and correct copy of this letter is attached to this Complaint as Exhibit I.  As noted by Mr. Petti's letter, CIGNA's position was that it could require another appeal whenever it changed the basis for the denial.  During the call Mr. Petti asked again for the Plan language supporting this position, to which CIGNA's Ms. Garrison did not respond.  Mr. Petti pointed out that CIGNA's appeal procedures were only valid if they were in the written and that it could not just invent them out of thin air:

> CIGNA cannot just make up appeal procedures out of thin air.  Rather, appeal procedures are only valid if they appear in a written plan document.

///

///

**COMPLAINT FOR ERISA BENEFITS; Case No. _____**

58.   CIGNA never responded to Mr. Petti's request that it identify the Plan language which required Ms. Anderson to file another appeal.  As such, she brings the current lawsuit.

59.   CIGNA, acting on Defendant LINA's behalf, wrongfully denied Plaintiff's claim, in the following respects:

(a)   Failure to pay LTD benefit payments to Plaintiff at a time when CIGNA knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the HUB LTD Plan, as Plaintiff was disabled and unable to work and therefore entitled to benefits.  Even though the GIGNA had such knowledge, CIGNA denied Plaintiff's claim for continued LTD benefits;

(b)   Withholding LTD benefits from Plaintiff knowing Plaintiff's claim was valid, for the reasons set forth in subparagraph (a) above;

(c)   Failing to provide a prompt and reasonable explanation of the basis relied on under the terms of the HUB LTD Plan documents, in relation to the applicable facts and HUB LTD Plan provisions, for the denial of Plaintiff's claims for LTD benefits;

(d)   Failing, after Plaintiff's claim was denied, to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect her claim along with an explanation of why such material is or was necessary; and

(e)   Failing to adequately investigate Plaintiff's claim.

60.   Plaintiff is informed and believes and thereon alleges that CIGNA wrongfully denied her disability benefits under the HUB LTD Plan by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will make Defendant aware of once Plaintiff discovers said acts or omissions.

61.   Following the denial of Plaintiff's disability claim under the HUB LTD Plan, Plaintiff exhausted all administrative remedies required under ERISA and the Plan, and ///

Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the HUB LTD Plan.

62.   As a proximate result of the aforementioned wrongful conduct of CIGNA, acting as LINA's agent, Plaintiff has damages for loss of disability benefits in a total sum to be shown at the time of trial.

63.   As a further direct and proximate result of this improper determination regarding Plaintiff's LTD claim, Plaintiff in pursuing this action has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

## THIRD CAUSE OF ACTION AGAINST LINA
### FOR DECLARATORY RELIEF

64.   Plaintiff refers to and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65.   A controversy now exists between LINA on the one hand and Ms. Anderson on the other as to whether she is disabled under the terms of the HUB LTD and HUB STD Plans.  Plaintiff seeks a declaration by this Court that Plaintiff meets the HUB LTD Plan's and the HUB STD Plan's definition of disability.  Plaintiff further seeks a declaration by this Court that, if in fact Plaintiff is found to have been and continued to remain disabled under the terms of the controlling Plan documents, all benefits provided under the Plans while a participant is disabled be reinstated retroactive to the date Plaintiff's disability benefits were denied.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1.   Payment of disability benefits due Plaintiff, including any and all prejudgment and postjudgment interest;

2.   For a declaration that Plaintiff is disabled under the terms of the HUB STD Plan and entitled to benefits under that Plan;

14

**COMPLAINT FOR ERISA BENEFITS; Case No. _____**

1    3.    For a declaration that Plaintiff is disabled under the terms of the HUB

2  LTD Plan and entitled to receive benefits under that Plan while Plaintiff is, was and

3  continues to remain disabled;

4    4.    Pursuant to 29 U.S.C. § 1132(g) for all costs and attorney fees incurred in

5  pursuing this action;

6    5.    For prejudgement and postjudgment interest as allowed for under ERISA;

7  and

8    6.    For such other and further relief as this Court deems just and proper.

9

10  DATED: March 9, 2015                    The Breslo Law Firm

11

12                                      S/*John C. Breslo*
                              BY _____
13                                      JOHN C. BRESLO
                                        ATTORNEY FOR PLAINTIFF
14                                      NANNETTE FAWN ANDERSON

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

**COMPLAINT FOR ERISA BENEFITS; Case No. _____**

**EXHIBIT A**

# Russell G. Petti

The Law Offices of Russell G. Petti                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

February 20, 2014

**Via Facsimile and U.S. Mail**
Erin Mascari
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015
Facsimile: (855) 872-9202

### Re:  Nannette Anderson, Incident No. 2926439

Dear Ms. Mascari:

First, enclosed with this letter is Ms. Anderson's acknowledgment that I
am acting as her attorney in this matter.  Also enclosed is CIGNA's authorization
which Ms. Anderson executed.  As such, I would appreciate if CIGNA would
discontinue communications with Ms. Anderson and address all further
communications to this office.

Second, I would like to repeat the request, made in my letter of January
31, 2014 to Ms. Rueswald, for a complete copy of Ms. Anderson's Short Term
Disability ("STD") file.

Third, Ms. Anderson has provided me with a letter and a packet of
documents you sent her on February 6, 2014.  According to this letter, you are
writing to provide Ms. Anderson with "an update on the status of [her] Long Term
Disability (LTD) claim."  I am somewhat puzzled by this, as I was unaware that
Ms. Anderson had filed an LTD claim.  In my letter of January 31st I stated that
Ms. Anderson had wanted to make an LTD claim, and I asked for claim forms.
Do I understand that there is already a claim in progress?

Given that Ms. Anderson is very ill and has had to move due to financial
stresses, it would not surprise me if I had less than complete information about
her status with CIGNA.  As such, I would appreciate if you would also provide
me with a complete copy of Ms. Anderson's LTD claim file.

Exhibit A

Erin Mascari
February 20, 2014
Page 2

Finally, I note that you also provided Ms. Anderson with a number of documents to fill out and return. We will be working on this and I hope to have responses to you shortly.

Please call with any questions or comments. If there is anything further you need, please do not hesitate to ask.

Sincerely yours,

RUSSELL G. PETTI

cc: Nannette Anderson

Exhibit A

# Russell G. Petti

The Law Offices of Russell G. Petti                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

**Via Facsimile Only**
Erin Mascari
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015
Facsimile: (855) 872-9202

### Re:  Nannette Anderson, Incident Number 2926439

Dear Ms. Mascari:

This is to confirm that I have retained Mr. Petti as my attorney with respect to all aspects of my claim for disability benefits against Life Insurance Company of North America and CIGNA, as well as with respect to all collateral issues. Please ensure that, in the future, all communications within this scope of representation be directed through him.

Very truly yours,

Nannette Anderson

466 Foothill Blvd. #389  •  La Cañada, CA 91011                    Exhibit A
Tel: (818) 952-2168  •  Fax: (818) 952-2186

## Authorization to Release Information
## Third Party

Nannette Fawn

I, _Anderson_ , hereby authorize Life Insurance Company of North America or any of its affiliated companies to furnish _Russell G. Petti_ any and all information with respect to my insurance claim under policy number VDT 960773. A photostatic copy of this authorization shall be considered as effective and valid as the original. I understand that I, or my authorized representative, will receive a copy of this authorization upon request.

I understand that this information will be used for the purpose of my Long Term Disability Claim (LTD)

I understand that this authorization is valid up to one year from the date of signature and that I may be asked to complete an additional authorization form after that date. I or my authorized representative may revoke this authorization at any time as it applies to future disclosures by writing the Company.

Date: _02/18/2014_                          Signature:

If claimant is under 18 years of age or incapacitated, the parent or guardian must sign. If claimant is deceased, the personal representative or executor of the estate must sign.

1/8/14

Exhibit A

# Russell G. Petti

The Law Office of Russell G. Petti          *E-mail: Rpetti@petti-legal.com* • www.petti-legal.com

| | | | |
|---|---|---|---|
| **To:** | Erin Mascari | **Date:** | February 20, 2014 |
| **Fax #:** | (855) 872-9202 | **Pages:** | 5, including this cover sheet |
| **From:** | Russell G. Petti | | |
| **Subject:** | **Nannette Anderson, Incident No. 2926439** | | |

*NOTICE*: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY
TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED,
CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, IF THE READER
OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT
RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL
SERVICE. THANK YOU.

**466 Foothill Blvd. # 389 • La Canada, CA 91011
Tel: (818) 952-2168 • Fax: (818) 952-2186**          Exhibit A

TRANSMISSION VERIFICATION REPORT

TIME    : 02/20/2014 15:04
NAME    :
FAX     :
TEL     :
SER.# : E8J684498

```
DATE,TIME               02/20  15:02
FAX NO./NAME            18558729202
DURATION                00:01:10
PAGE(S)                 05
RESULT                  OK
MODE                    STANDARD
                        ECM
```

Exhibit A

**EXHIBIT B**

# Russell G. Petti

The Law Offices of Russell G. Petti          *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

March 4, 2014

***Via U.S. Mail***
Erin Mascari
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015

### Re:   Nannette Anderson, Incident No. 2926439

Dear Ms. Mascari:

First, as we discussed on February 28th, I am aware that CIGNA needs Ms. Mascari's medical records. As I told you, I have sent my own requests to Ms. Mascari's providers and will forward them as they arrive. Three of the physicians have responded, Dr. Kaufman, Dr. Campbell, and Dr. Patel. Dr. Patel's response was incomplete, but I find her complete report is located in both Dr. Kaufman's and Dr. Campbell's records. At any rate, enclosed with this letter are the records provided by Dr. Kaufman and Dr. Campbell.

In addition, I find the statement in our letter of February 28th that, if complete records are not obtained by March 10, 2014 CIGNA will decide Ms. Anderson's claim based on the records it has to be unfortunate, for three reasons. First, as I told you during our conversation, the applicable regulations promulgated by the DOL contain a procedure for what an ERISA fiduciary should do when it is waiting for additional information. Specifically, pursuant to 29 CFR § 2560.503-1(f)(4), "[i]n the event that a period of time is extended as permitted pursuant to paragraph (f)(2)(iii) or (f)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information."

Second, it appears from our conversation on February 28th that Ms. Anderson never submitted a "claim," *per se.* Rather, CIGNA started the claim process on Ms. Anderson's behalf based on its determination that she wished to file a claim. This is fine, but I find it interesting that CIGNA intends to decide Ms.

---

Exhibit B

Erin Mascari
March 4, 2014
Page 2

Anderson's claim (and, presumably, deny it for lack of evidence) only ten days after Ms. Anderson and her counsel first learned that she had a claim pending.

Finally, let me remind CIGNA of its obligation, as an ERISA fiduciary, to fully investigate a claim prior to denying it. As noted by the Court in *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792 (10th Cir. 2004), an ERISA fiduciary has a duty to affirmatively seek out evidence that it had reason to believe would show the claim to be payable:

> While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them. It must consider the interests of deserving beneficiaries as it would its own. An ERISA fiduciary presented with a claim that a little more evidence may prove valid should seek to get to the truth of the matter.

*Id.*, at 807-808 (footnote omitted). *Also Neurocare, Inc. v. Principal Life Ins. Co.* 1999 WL 33221123, \*5 (N.D.Cal.,1999) "Under Ninth Circuit law, it is the insurer's duty to obtain all evidence necessary to make an informed decision on a claim."

CIGNA also has a duty, under unpreempted California insurance law, to fully investigate claims before it denies them. As the California Supreme Court noted in *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819, "it is essential that an insurer fully inquire into possible bases that might support the insured's claim." That Court held that it a violation of the duty of good faith and fair dealing that California law imposes on insurance contracts to fail to seek out possible basis for paying a claim:

> Although we recognize that distinguishing fraudulent from legitimate claims may occasionally be difficult for insurers, especially in the context of disability policies, an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.

*Egan*, 24 Cal.3d at 819. In *Wible v. Aetna Life Ins. Co.*, 375 F.Supp.2d 956 (C.D.Cal., 2005) the Court held that this state insurance law was saved from preemption and applied in ERISA cases:

> Finally, under unpreempted California insurance law, Aetna has a duty to fully investigate claims. "It is essential that an insurer fully

Exhibit B

Erin Mascari
March 4, 2014
Page 3

> inquire into possible bases that might support the insured's claim."
> *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819, 169
> Cal.Rptr. 691, 620 P.2d 141 (1979).

*Wible*, 375 F.Supp.2d at 968.

Please call with any questions or comments. If there is anything further you need, please do not hesitate to ask.

Sincerely yours,

RUSSELL G. PETTI

cc: Nannette Anderson

**EXHIBIT C**

*Erin Mascari*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 8635331
Fax: 855-872-9202
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability



MR. RUSSELL G. PETTI
466 FOOTHILL BOULEVARD
#389
LA CANADA, CA 91011

March 10, 2014

Name:                           NANNETTE ANDERSON
Incident Number:                2926439
Plan/Policy Number:             VDT0960773
Plan/Policy Holder:             HUB INTERNATIONAL LIMITED
Underwriting Company:           Life Insurance Company of North America

DEAR MR. PETTI,

This letter is regarding your client's Long Term Disability (LTD) claim. We have completed our evaluation and must advise that your client's claim has been denied.

Your client's employer's disability policy contains the following provision:

*"The Insurance Company will not pay benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or for which a reasonable person would have consulted a Physician within 3 months before his or her most recent effective date of insurance.*

*The Pre-existing Condition Limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after an Employee is covered for at least 12 months after his or her most recent effective date of insurance, or the effective date of any added or increased benefits."*

In addition, your client's policy states the following:

*"Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due."*

In our letter dated January 24, 2014, we advised your client it was necessary to conduct an evaluation to determine if your client's disabling condition pre-existed your client's coverage under the policy.

Your client's effective date of coverage was June 1, 2012 and your client's stated date of disability is March 26, 2013, which is within the first 12 months following your client's effective date of coverage. Accordingly, we evaluated the period of March 1, 2012, through May 31, 2012 to determine if there was a pre-existing condition.

Exhibit C

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

March 10, 2014
Page 2



We requested and did not receive information from Dr. Gause, Dr. Hessler and Dr. Lykins for the time period of March 1, 2012 through May 31, 2012, and, as such, were unable to determine if your client is limited from coverage for your client's conditions. We are unable to complete our investigation without this information and did not continue our evaluation of your client's disability. Therefore, your client's claim has been denied and no benefits are payable.

## What If You Don't Agree With The Claim Decision?

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your client's Employer, your client's claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA). ERISA requires that your client go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination.

Here's how to submit your client's administrative appeal review request:

-- Submit your client's appeal letter to us within 180 days of your receipt of this letter.

-- Your client's appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

-- Your client's appeal letter may include written comments as well as any new information you may have.

-- Your client may also submit additional information. Additional information may include, but is not limited to: medical records from your client's doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of March 1, 2012 through May 31, 2012 from Dr. Gause, Dr. Hessler and Dr. Lykins to clear your client for the pre-existing time period.

-- In addition, we requested but did not receive complete information from Dr. Gause, Dr. Hessler, Dr. Lykins and Dr. Patel for the time period of March 1, 2013 to present. Your client may also wish to have her doctor(s) provide some or all of the following information for the time period of March 1, 2013 to present:

- Copies of any other diagnostic test results (such as specific testing to particular situation/condition) that document a sufficient degree of severity in your client's condition to render your client unable to perform all the material duties of your client's regular occupation.

- Copies of treatment notes, office notes, physical therapy notes and/or consultation reports for the period of March 1, 2013 through the present that we may not have on file.

- Functional Capacity Evaluation.

- A discussion by your client's treating physician(s) of the medical evidence pointing to a condition that prevents your client from performing all the material duties of your client's own occupation. What are the current data sources used to make this determination?

- A discussion by your client's treating physician(s) describing your client's current and future treatment plan(s). What are the problems of treatment? What are the treatment goals (clinical and measurable)? What are the treatment strategies for each goal? How does the treatment plan address your return to work?

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

Please be aware that you are entitled to receive, upon request and free of charge, information relevant to your claim for benefits.

Exhibit C

March 10, 2014
Page 3

Please contact our office at 800-352-0611 ext. 8635331 should you have any questions.

Sincerely,

*Erin Mascari*

Erin Mascari
Disability Claim Manager

Exhibit C

**EXHIBIT D**

# Russell G. Petti

The Law Offices of Russell G. Petti                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

May 28, 2014

***Via U.S. Mail***
Erin Mascari
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015

        **Re:   Nannette Anderson, Incident No. 2926439**

Dear Ms. Mascari:

        This letter is in response to your letter of March 10, 2014 denying Ms. Anderson's claim on the grounds that it is pre-existing.  According to your letter, you didn't actually decide that Ms. Anderson's claim was pre-existing, only that you could not make this determination because you were lacking records from Dr. Gause, Dr. Hessler and Dr. Lykins.

        Ms. Anderson is appealing this denial of her claim.  In support of this appeal, first, CIGNA's contention that it could not decide whether Ms. Anderson's claim was pre-existing without further records from Drs. Gause, Hessler and Lykins is nothing short of ridiculous.  According to your letter, the pre-existing period is March 1, 2012 through May 31, 2012.  It is patently obvious from the existing record in CIGNA's possession that Ms. Anderson did not treat with these three physicians during this pre-existing period.

        For example, it is difficult to see how Dr. Gause's records were necessary to see if Ms. Anderson was treated for her neurological condition in 2012.  Dr. Gause's March 19, 2013 report is already in CIGNA's file, and this report clearly states, on the first page, in capital letters, underlined and in bold face type that it is the "**INITIAL CONSULTATION**."  If Ms. Anderson's initial consultation with Dr. Gause was in March of 2013, he clearly did not treat her during the March 2012 through May 2012 time frame.

        Similarly, as can be determined from Ms. Anderson's appeal letter which, again, is in CIGNA's file, Dr. Hessler worked in the same office as Dr. Gause and saw Ms. Anderson for physical therapy.  Ms. Anderson's letter states that

Exhibit D

Erin Mascari
May 28, 2014
Page 2

these treatments began on March 25, 2013. More, given that Dr. Gause's March 19, 2013 report referred Ms. Anderson for physical therapy, it is hardly rocket science to deduce that Dr. Hessler's physical therapy for Ms. Anderson began after and as a result of the March 19th report from Dr. Gause.

With respect to Dr. Lykins, Dr. Gause's March 19, 2013 report recommended a "[r]eferral to neurologist and ENT physician." Dr. Lykins is, of course, the ENT specialist Ms. Anderson was referred to by Dr. Gause, so of course his initial consultation with Ms. Anderson would be after that day. If this isn't enough, anyone reading Dr. Lykins' March 21, 2013 report–which is also in CIGNA's file–would recognize from its context that it was his initial report.

In short, it is patently obvious from CIGNA's file that additional records from Drs. Gause, Hessler, and Lykins would not show that Ms. Anderson had been treated for her condition during the pre-existing period. Denying Ms. Anderson's claim as pre-existing due to the lack of these records was bad faith and a breach of CIGNA's fiduciary obligations. And requiring me to obtain those records was just the type of paper drill that insurers routinely force claimants to undergo to delay their claims and wear them out.

Nonetheless, I have completed this paper drill. I have obtained complete records from these three physicians. I am producing them with this letter, in support of Ms. Anderson's appeal, as follows:

1.    Dr. Gause's records, numbered Anderson Appeal Page 1-4;
2.    Dr. Hessler's records, numbered Anderson Appeal Page 5-22; and
3.    Dr. Lykins' records, numbered Anderson Appeal Page 23-46.

In addition, enclosed with this letter are the following additional documents, in support of Ms. Anderson's appeal:

4.    Ms. Anderson's SSDI Award Letter, numbered Anderson Appeal Page 47-53;
5.    The IME conducted by the Social Security Administration, numbered Anderson Appeal Page 54-63; and
6.    Ms. Anderson's Declaration, numbered Anderson Appeal Page 64-65.

This completes Ms. Anderson's appeal, and we look forward to a favorable decision.

Exhibit D

Erin Mascari
May 28, 2014
Page 3

Before closing I wish to make two additional points. First, ERISA requires that a Plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). In promulgating claims handling regulations to implement this requirement, the Department of Labor ("DOL") prohibited insurers from having employees work on appeals after denying claims. Specifically, under 29 CFR § 2560.503-1(h)(3), when an employee involved in a denial is permitted to work on the appeal from that denial, the regulations  presume that the review process does not comply with ERISA's "full and fair review" requirement.

The regulation requires disability plans to:

(ii) Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.

29 CFR § 2560.503-1(h)(3).[1]  As such, it is my expectation that, unless CIGNA intends to flout this rule, you will not be involved in Ms. Anderson's appeal from your denial.

Second, given the bad faith of CIGNA's denial of Ms. Anderson's LTD claim, I fully expect your replacement will search around for an alternative basis on which to deny her appeal. However, according to *Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955 (9th Cir. 2006) (*en banc*), when an insurer upholds an appeal for a different (or an additional) reason than the initial denial, it violates ERISA's procedures:

An administrator must provide a plan participant with adequate notice of the reasons for denial, 29 U.S.C. § 1133(1), and must provide a "full and fair review" of the participant's claim, *id.* § 1133(2); see also 29 C.F.R. § 2560.503-1(g)(1), (h)(2). When an administrator tacks on a new reason for denying benefits in a final

---

[1]  While section (h)(3)(ii) of the regulations refers to group health plans, it is made applicable to disability plans by 29 CFR § 2560.503-1(h)(4).  Exhibit D

Erin Mascari
May 28, 2014
Page 4

> decision, thereby precluding the plan participant from responding to
> that rationale for denial at the administrative level, the administrator
> violates ERISA's procedures.

*Abatie*, 458 F.3d at 974. As such, assuming that CIGNA does invent some new
ground for denying Ms. Anderson's appeal, at a minimum Ms. Anderson should
have the right to contest this with a further appeal.

If you have any questions about any of the above, please do not hesitate
to call.

Sincerely yours,

RUSSELL G. PETTI

Encl.

cc: Nannette Anderson

Exhibit D

**EXHIBIT E**

## *Facsimile Transmission Cover Sheet*



**CIGNA Group Insurance**
Life · Accident · Disability

| **Transmit to FAX number** | **Date** | **Time** | **Total number of pages** |
|---|---|---|---|
| 18189522186 | July 28, 2014 | 12:51 PM | (including this sheet) : 3 |

| **To:** | | **From:** | |
|---|---|---|---|
| **Name** | MR. RUSSELL G. PETTI | **Name** | Genesis Aguinaga, |
| **Company** | | | **Department** Dallas Main |
| **Phone** | 818-952-2168 | **Phone** | 800-352-0611 ext. 8634928 |
| **Address** | 466 FOOTHILL BOULEVARD #389 LA CANADA, CA 91011 | **Address** | Disability Management Solutions P.O. Box 709015 Dallas, TX 75370-9015 |

**Comments:**

CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.

"CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation."

| [ ] Acknowledgment Requested | To Fax a reply, dial : 855-813-4365 |
|---|---|

Exhibit E

*Genesis Aguinaga*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 8634928
Fax: 855-813-4365
www.mycigna.com

**CIGNA Group Insurance**
Life · Accident · Disability

MR. RUSSELL G. PETTI
466 FOOTHILL BOULEVARD
#389
LA CANADA, CA 91011

July 28, 2014

Name:                           NANNETTE ANDERSON
Incident Number:                2926439
Plan/Policy Number:             VDT0960773
Plan/Policy Holder:             HUB INTERNATIONAL LIMITED
Underwriting Company:           Life Insurance Company of North America

DEAR MR. PETTI,

This letter is regarding your Long Term Disability (LTD) claim. As you were advised in our letter dated March 10, 2014 Ms. Nannette Anderson's LTD claim has been closed.

Please be advised that on May 28, 2014 we received Dr. Gause, Dr. Hessler, Dr. Lykins medical records and a Social Security Award Letter and SSA Independent Consultative Exam from Russell G. Petti .

This information was reviewed and does not change our prior decision.
— Office note dated 3/19/2013 from Dr. Gause
— Office notes dated from 3/25/2013 to 6/21/2013 from Dr. Hessler
— Office notes dated from 3/21/2013 to 5/13/2013 from Dr. Lykins
— Social Security Award Letter
— SSA Independent Consultative Exam dated 4/1/2014
— Nannette Anderson's Appeal Letter dated 5/28/2014

At this time, we are not able to complete the evaluation of the pre-existing condition. We were able to clear Dr. Gause from the pre-existing period of March 1, 2012 to May 31, 2012. However we have advised in our letter dated March 10, 2014, that we would need records dated from March 1, 2012 to May 31, 2012 from Dr. Hessler and Dr. Lykins. In order to clear the pre-existing period with these providers, we would need a note from each of these providers stating treatment or no treatment during this time frame.

The claim remains closed and no further action will be taken on your claim at this time.

Please refer to our letter dated March 10, 2014 for details of the basis of the denial as well as any next steps available to you. If you would like to appeal our denial of your claim, this letter includes instructions on how to appeal, time limits for requesting an appeal, as well as what information may be useful for review.

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

Exhibit E

July 28, 2014
Page 2

Please contact our office at 800-352-0611 ext. 8634928 should you have any questions.

Sincerely,

*Genesis Aguinaga*

Genesis Aguinaga
Disability Claim Manager

**EXHIBIT F**

# Russell G. Petti

The Law Offices of Russell G. Petti

*E-mail: RPetti@petti-legal.com • www.petti-legal.com*

October 19, 2014

***Via Facsimile and U.S. Mail***
Genesis Aguinaga
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015
Facsimile No. 855-813-4365

     **Re:  Nannette Anderson, Incident No. 2926439**

Dear Ms. Aguinaga:

     In your letter of July 28, 2014 you stated that CIGNA would perform no further review of my client's claim until I submitted statements from Dr. Lykins and Dr. Hessler as to whether they provided treatment to Ms. Anderson from March 1, 2012 through May 31, 2012. This is in spite of the fact that I had previously provided CIGNA with complete records of these physicians showing there was no treatment during this period.

     Essentially, then, CIGNA was refusing to adjudicate Ms. Anderson's claim on the grounds that her illness might be pre-existing, even though (1) CIGNA has no evidence it was pre-existing and (2) all evidence currently in the Record shows it was not. Given CIGNA's bad faith conduct, my initial impulse was to just file a lawsuit. On reflection, though, I have decided to walk the extra mile on my client's behalf. Enclosed, then, are certifications from Dr. Lykins and Dr. Hessler that they did not treat Ms. Anderson during the relevant period.

466 Foothill Blvd. #389 • La Cañada, CA 91011
Tel: (818) 952-2168 • Fax: (818) 952-2186

Exhibit F

Genesis Aguinaga
October 19, 2014
Page 2

Given that CIGNA's time to decide Ms. Anderson's claim under the time
periods set out by in 29 CFR § 2560.503-1(i)(3) have long been exhausted, an
expeditions decision would be appreciated.

Sincerely yours,

RUSSELL G. PETTI

Enclosures

cc: Nannette Anderson

# Russell G. Petti

The Law Offices of Russell G. Petti                                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

September 19, 2014

***Via Facsimile and U.S. Mail***
Dr. Monte D. Hessler, D.C.
Spine Institute of Arizona
9735 N. 90th Place
Scottsdale, AZ 85258
Facsimile No.: (602) 953-1782

Re:  **Nannette Anderson**

Dear Dr. Hessler:

   I represent Ms. Nannette Anderson, who is appealing CIGNA's denial of her claim for Long Term Disability ("LTD") Benefits. Enclosed with this letter is an authorization signed by Ms. Anderson.

   CIGNA is taking the position that they will not exam Ms. Anderson's claim unless we can establish that her illness does not pre-exist her coverage with CIGNA. The pre-existing period in Ms. Anderson's case is from March 1, 2012 through May 31, 2012.

   As such, if you could initial the appropriate box and return this letter to me it would be greatly appreciated. If there is any fee required please let me know.

                                        Sincerely yours,

                                        RUSSELL G. PETTI

   I, Dr. Monte Hessler
   _____ did provide treatment to Ms. Anderson during the period from March 1, 2012 through May 31, 2012.

   ✓ did not provide treatment to Ms. Anderson during the period from March 1, 2012 through May 31, 2012. *All of her treatment was performed in 2013*

                        _____, D.C.
                        Dr. Monte Hessler, D.C.

                                                            Exhibit F

# Russell G. Petti

The Law Offices of Russell G. Petti                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

September 19, 2014                         SEP 24 2014

**Via Facsimile and U.S. Mail**
Dr. Christopher Lykins, M.D.
6905 E. Chauncey Ln., STE 100
Phoenix, AZ 85045
Facsimile No.: (480) 538-3201

**Re:  Nannette Anderson**

Dear Dr. Lykins:

I represent Ms. Nannette Anderson, who is appealing CIGNA's denial of
her claim for Long Term Disability ("LTD") Benefits.  Enclosed with this letter is
an authorization signed by Ms. Anderson.

CIGNA is taking the position that they will not exam Ms. Anderson's claim
unless we can establish that her illness does not pre-exist her coverage with
CIGNA.  The pre-existing period in Ms. Anderson's case is from March 1, 2012
through May 31, 2012.

As such, if you could initial the appropriate box and return this letter to me
it would be greatly appreciated.

Sincerely yours,

RUSSELL G. PETTI

I, Dr. Christopher Lykins,
_____ did provide treatment to Ms. Anderson during the period from
March 1, 2012 through May 31, 2012.

__X__ did not provide treatment to Ms. Anderson during the period from
March 1, 2012 through May 31, 2012.

_____
Dr. Christopher Lykins, M.D.

# Russell G. Petti

The Law Office of Russell G. Petti                 *E-mail: Rpetti@petti-legal.com* • www.petti-legal.com

| | | | |
|---|---|---|---|
| **To:** | Genesis Aguinaga | **Date:** | October 19, 2014 |
| **Fax #:** | 855-813-4365 | **Pages:** | 5, including this cover sheet |
| **From:** | Russell G. Petti | | |
| **Subject:** | **Nannette Anderson, Incident No. 2926439** | | |

*NOTICE:* THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.

**466 Foothill Blvd. # 389 • La Canada, CA 91011**
**Tel: (818) 952-2168 • Fax: (818) 952-2186**          Exhibit F

TRANSMISSION VERIFICATION REPORT

```
TIME  : 10/19/2014 18:32
NAME  :
FAX   :
TEL   :
SER.# : E8J684498
```

```
DATE,TIME        10/19  18:30
FAX NO./NAME     18558134365
DURATION         00:01:11
PAGE(S)          05
RESULT           OK
MODE             STANDARD
                 ECM
```

Exhibit F

**EXHIBIT G**

*Trudi Garrison*
*CIGNA Group Insurance*
629
Disability Management Solutions
P.O. Box 709015
Dallas, TX 75370-9015

Phone: 800-352-0611 ext. 5628
Fax: 855-813-4365
www.mycigna.com



**CIGNA Group Insurance**
Life · Accident · Disability



MR. RUSSELL G. PETTI
466 FOOTHILL BOULEVARD
#389
LA CANADA, CA 91011

November 7, 2014

Name:                              NANNETTE ANDERSON
Incident Number:                   2926439
Plan/Policy Number:                VDT0960773
Plan/Policy Holder:                HUB INTERNATIONAL LIMITED
Underwriting Company:              Life Insurance Company of North America

DEAR MR. PETTI,

This letter is about your Client's Long Term Disability (LTD) claim. We have separated this letter into subject headings for your ease of reference.

Will Your Client Receive Disability Benefits?

After completing our review of your claim, we are unable to approve you r Client's claim for benefits.

What Provisions of the Disability Policy Apply to the Decision on Your Claim?

Definition of Disability/Disabled

*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1. unable to perform the material duties of his or her Regular Occupation; and*
*2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*The Insurance Company will require proof of earnings and continued Disability."*

Disability Benefits:

*"The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.*

*The Insurance Company will require continued proof of the Employee's Disability for benefits to continue."*

Elimination Period

Exhibit G

CIGNA Group Insurance is a registered service mark of CIGNA Intellectual Property, Inc., licensed for use by insurance company subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York and Connecticut General Life Insurance Company. Products and services are provided by these insurance company subsidiaries and not by CIGNA Corporation.

November 7, 2014
Page 2

*"The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.*

*A period of Disability is not continuous if separate periods of Disability result from unrelated causes."*

### What Information Was Reviewed?

We recently completed a review of the information on file. When reviewing your claim for disability benefits, all information on file was considered. This included, but was not limited to the following:

Medical records from Dr. West dated March 16, 2013
Medical records from Dr. Hessler dated March 25, 2013 to June 21, 2013
Medical records from Dr. Lykens dated March 25, 2013 and April 25, 2013
Medical records from Dr. Lauren dated April 1, 2013
Medical records from Dr. Durbin dated March 5, 2013 to April 29, 2013
Medical records from Dr. Kaufman dated May 9, 2013 to October 13, 2013
Medical records from Dr. Campbell dated May 14, 2013 to December 6, 2013
Medical records from Dr. Barnes dated July 10, 2013
Medical records from Dr. Hurst dated July 12, 2013
Medical records from Dr. Marrone-Strupinsky dated July 22, 2013
Medical records from Dr. Adcock dated July 28, 2013
Medical records from Dr. Reuss dated November 26, 2013
Medical records from Dr. Dooley dated April 1, 2014

### Who Reviewed Your Claim?

Disability Claim Manager, Nurse Case Manager and Medical Director

### How Was the Claim Decision Reached?

The medical contained in file has been reviewed by our Medical Director. Based on the medical received for review, the available medical information is not supportive of a functional impairment of severity to support limitations and restrictions of no work.

Your client is noted to have multiple complaints of hoarseness, gait disturbances, visual disturbances, fine motor tremors, back pain, chest pain and memory loss. Her last office visit note with Dr. Campbell dated December 6, 2013 noted right sided lag with her muscles intact and symmetrical. He also noted slow walk, delayed repetitive movement and a fine tremor with fine motor. The evaluation with Dr. Adcock noted a negative ear, nose and throat (ENT) work up and no serious chronic neurological condition. She was cognitively intact, had no myocardial ischemia and her hoarseness was likely not physiologic. The Social Security Disability Examination by Dr. Dooley made no recommendations. There was no current range of motion testing, no current strength testing due to her neck and back pain or her gait disturbance. Her previous brain scans were negative. The x-rays of her cervical and thoracic spine showed some degenerative changes, but no acute intervention was required.

There were no medical records noting current aggressive treatment for her speech, cognitive deficits, cardiac, neurological, mental or mobility issues. The records document that your client was referred for speech therapy and reportedly attended. The only record from speech therapy evaluation was a swallowing test performed May 15, 2013 and the results were normal. The records document inconsistent findings with descriptions of wheelchair use, markedly unsteady gait, needs assistance and a normal gait. The medical records document multiple complaints of physical symptoms. The symptoms are variable and there have been numerous work ups, testing, and diagnostic evaluations that have not shown pathology that would explain the migratory complaints.

At this time your client's claim has been closed and no benefits are payable.

### What If You Don't Agree With The Claim Decision?

Exhibit G

If you disagree with our determination and wish to have it reviewed, please follow the steps described below.

Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Security Act of 1974, Public Law 93-406 (ERISA). ERISA requires that you go through the Company's administrative appeal review process prior to pursuing any legal action challenging our claim determination.

Here's how to submit your administrative appeal review request:

-- Submit your appeal letter to us within 180 days of your receipt of this letter.

-- Your appeal letter should be sent to the Life Insurance Company of North America representative signing this letter to the address noted on the letterhead.

-- Your appeal letter may include written comments as well as any new information you may have.

-- You may also submit additional information. Additional information may include, but is not limited to: medical records from your doctor and/or hospital, test result reports, therapy notes, etc. These medical records should cover the period of March 26, 2013 to present.

-- You may also wish to have your doctor(s) provide some or all of the following:

Copies of any other current diagnostic test results, such as surgical reports, x-rays, Computed tomography (CT) scan, neurological exam, functional capacity evaluation which document a sufficient degree of severity in your condition to render you unable to perform the duties of your occupation. Please include copies of any recent test results performed (in the last 6 months).

Specific/limitations/restrictions that preclude you from performing the duties of your regular occupation. What specific essential job functions, activities of daily living, and social/recreational activities are you incapable of performing?

A discussion by your treating physician(s) of the medical evidence which prevents you from performing the duties of your occupation. What are the current data sources used to make these determinations?

A discussion by your treating physician(s) describing your current and future treatment plan(s). What are the problems of treatment? What are the treatment goals? What are the treatment strategies for each goal? How does the treatment plan address you returning to work?

You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please be aware that you are entitled to receive, upon request and free of charge, information relevant to your claim for benefits.

Please contact our office at 800-352-0611 ext. 5628 should you have any questions.

Sincerely,

*Trudi Garrison*

Trudi Garrison
Disability Claim Manager

Exhibit G

**EXHIBIT H**

# Russell G. Petti

The Law Offices of Russell G. Petti          *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

November 23, 2014

**Via Facsimile and U.S. Mail**
Trudi Garrison
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015
Facsimile No. 855-813-4365

  **Re:   Nannette Anderson, Incident No. 2926439**

Dear Ms. Garrison:

        I am in receipt of your letter dated November 7, 2014.  In this letter you
state that you are denying Ms. Anderson's claim on the grounds that "the
available medical information is not supportive of a functional impairment of
severity to support limitations and restrictions of no work."  However your letter
states that, before Ms. Anderson can file a lawsuit challenging this
determination, she is required to submit an appeal to CIGNA.  "ERISA requires
that you go through the Company's administrative appeal review process prior to
pursuing any legal action challenging our claim determination."

        What this fails to recognize is that Ms. Anderson has already gone
through "the Company's administrative appeal review process."  Specifically, on
March 10, 2014 CIGNA's Erin Mascari denied Ms. Anderson's claim on the
grounds that, according to her, it was barred by the Policy's pre-existing
condition exclusion.  As with your letter of November 7th, Ms. Mascari's March
10th letter stated that Ms. Anderson was required to appeal before filing a legal
claim.  "ERISA requires that you go through the Company's administrative
appeal review process prior to pursuing any legal action challenging our claim
determination."   And Ms. Mascari's March 10th letter was clear that Ms.
Anderson could bring a lawsuit if the appeal was denied:

        You have the right to bring a legal action for benefits under the
        Employee Retirement Income Security Act of 1974 (ERISA) section
        502(a) following an adverse benefit determination on appeal.

Trudi Garrison
November 23, 2014
Page 2

Ms. Anderson did, in fact, appeal CIGNA's March 10th denial of her claim (see my letter of May 28, 2014) and your letter of November 7th was an "adverse benefit determination" with respect to that appeal. As such, I do not understand CIGNA's claim that it can make Ms. Anderson appeal yet again prior to having the right to bring a lawsuit. At a minimum, it is contrary to Ms. Mascari's previous statement that Ms. Anderson could file a lawsuit if CIGNA disallowed her appeal from the March 10th denial.

As such, I would appreciate an explanation (with citation to the Plan language as appropriate) for CIGNA's determination that it can compel Ms. Anderson to appeal yet again prior to filing a lawsuit. In addition, I would appreciate a complete copy of the materials on which CIGNA relied in denying Ms. Anderson's appeal.

Given that Ms. Anderson's LTD claim has now been outstanding for over ten months with, apparently, no final decision, an expeditious response to this letter would be appreciated.

Sincerely yours,

RUSSELL G. PETTI

cc: Nannette Anderson

Exhibit H

# Russell G. Petti

The Law Office of Russell G. Petti          *E-mail: Rpetti@petti-legal.com* • www.petti-legal.com

| | | | |
|---|---|---|---|
| **To:** | Trudi Garrison | **Date:** | November 23, 2014 |
| **Fax #:** | 855-813-4365 | **Pages:** | 3, including this cover sheet |
| **From:** | Russell G. Petti | | |
| **Subject:** | **Nannette Anderson, Incident No. 2926439** | | |

*NOTICE*: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.

TRANSMISSION VERIFICATION REPORT

```
                                   TIME   : 11/23/2014 11:24
                                   NAME   :
                                   FAX    :
                                   TEL    :
                                   SER.# : E8J684498
```

```
        DATE,TIME                    11/23  11:23
        FAX NO./NAME                 18558134365
        DURATION                     00:00:57
        PAGE(S)                      03
        RESULT                       OK
        MODE                         STANDARD
```

Exhibit H

**EXHIBIT I**

# Russell G. Petti

The Law Offices of Russell G. Petti                    *E-mail: RPetti@petti-legal.com • www.petti-legal.com*

December 2, 2014

***Via Facsimile and U.S. Mail***
Trudi Garrison
CIGNA Group Insurance
Disability Management Solutions
P.O. Box 709015
Dallas, Texas 75370-9015
Facsimile No. 855-813-4365

    **Re:   Nannette Anderson, Incident No. 2926439**

Dear Ms. Garrison:

    This letter is to memorialize yesterday's telephone call, in which we discussed whether Ms. Anderson is required to submit a second appeal before she has the right to obtain judicial review of CIGNA's conduct. CIGNA's position is that because it changed the reason for the denial it can compel Ms. Anderson to appeal this new reason for the denial. I asked if this interpretation of CIGNA's appeal procedures is supported by any actual Plan or Policy language and you were not able to point to any.

    CIGNA cannot just make up appeal procedures out of thin air. Rather, appeal procedures are only valid if they appear in a written plan document. As held by the Court in *Kaufmann v. Prudential Ins. Co. of America*, 840 F.Supp.2d 495 (D.N.H.,2012):

> Every ERISA plan must be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). A key congressional report explains the purpose of this requirement: "A written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (quoting H.Rep. No. 93–1280, at 297 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 5077–78).

Trudi Garrison
December 2, 2014
Page 2

*Kaufman*, 840 F. Supp. 2nd at 497.  The *Kaufman* Court continues that this
written plan must include the appeal procedures:

> The written instrument constituting the plan must contain "the basic
> terms and conditions of the plan." *CIGNA Corp. v. Amara*, —— U.S.
> ——, 131 S.Ct. 1866, 1877, 179 L.Ed.2d 843 (2011) (citing 29
> U.S.C. § 1102). As the statutory scheme makes plain, the requisite
> terms include procedures for appealing a denial or termination of
> benefits.

*Kaufmann*, 840 F.Supp.2d at 497.  The point is, the rules that you are stating
that Ms. Anderson must follow before she files a lawsuit aren't enforceable
unless they are actually part of the written Plan promulgated by the actual Plan
sponsor.

Given the apparent lack of any Plan language requiring Ms. Anderson to
file another appeal, we are not appealing at this time.  As we discussed, I want
to consider Ms. Anderson's options after having had a chance to review her
record.

During our call I asked when I might receive a copy of the record, and you
informed me that CIGNA would only provide me with the record after I requested
it in writing.  I pointed out that I had requested the record in my letter of
November 23rd and, after you reviewed that letter, you agreed.

I raise this last bit because I think your statement that CIGNA would not
respond to an oral request for documents was telling. I can see no reason for
refusing to comply with my oral request for the record other then dragging the
process out and putting additional burdens on a claimant trying to obtain
benefits.

Moreover, there is nothing in either the Plan or the regulations stating that
a request for documents must be in writing. 29 CFR § 2560.503-1(h)(iii) states
that a Plan must "[p]rovide that a claimant shall be provided, upon request and
free of charge, reasonable access to, and copies of, all documents, records, and
other information relevant to the claimant's claim for benefits." This regulation
nowhere states that this request must be in writing, and there is nothing in the
Plan or Policy which imposes that requirement either.

CIGNA's decision to impose a requirement that the request for documents
be in writing is similar to its decision to require a new appeal whenever it

Exhibit I

Trudi Garrison
December 2, 2014
Page 3

changes its mind as to why benefits are not payable.  Neither decision has any support in either Plan language or in ERISA's governing regulations.  Rather, it appears that CIGNA is imposing arbitrary rules by fiat, essentially making up these rules as it goes along and changing them whenever it appears that a claimant might be nearing a position to seek judicial review of CIGNA's conduct.

At any rate, I look forward to receiving a copy of CIGNA's file.

Sincerely yours,

RUSSELL G. PETTI

cc: Nannette Anderson

Exhibit I

# Russell G. Petti

The Law Office of Russell G. Petti                    *E-mail: Rpetti@petti-legal.com* • www.petti-legal.com

| | | | |
|---|---|---|---|
| **To:** | Trudi Garrison | **Date:** | December 2, 2014 |
| **Fax #:** | 855-813-4365 | **Pages:** | 4, including this cover sheet |
| **From:** | Russell G. Petti | | |
| **Subject:** | **Nannette Anderson, Incident No. 2926439** | | |

*NOTICE*: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW, IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

**466 Foothill Blvd. # 389 • La Canada, CA 91011**
**Tel: (818) 952-2168 • Fax: (818) 952-2186**          Exhibit I

TRANSMISSION VERIFICATION REPORT

```
TIME  : 12/02/2014 08:51
NAME  :
FAX   :
TEL   :
SER.# : E8J684498
```

```
DATE,TIME         12/02  08:50
FAX NO./NAME      18558134365
DURATION          00:01:13
PAGE(S)           04
RESULT            OK
MODE              STANDARD
```

Exhibit I